**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HANORA ZAAHID, | : | |
| *Plaintiff,* | : | |
| | : | CIVIL ACTION |
| v. | : | NO._____ |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| YESCARE CORP., | : | |
| *Defendants.* | : | |

**COMPLAINT**

Plaintiff Hanora Zaahid, by and through undersigned counsel, the Philadelphia Chapter of the Council on American-Islamic Relations, hereby brings this action against Defendants YesCare Corp. and the City of Philadelphia, and avers as follows:

**I.    JURISDICTION AND VENUE**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

2. This Court has supplemental jurisdiction over Plaintiff's state law claims brought under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq., pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

3. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein occurred within this district and Defendant Curran-Fromhold Correctional Facility (a facility operated by the City of Philadelphia) is located at 7901 State Road, Philadelphia, Pennsylvania 19136.

4.      Plaintiff has exhausted all required administrative remedies. Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission ("PHRC"). The EEOC issued a Determination and Notice of Rights on February 10, 2026 (EEOC Charge No. 530-2025-04387). This Complaint is filed within ninety (90) days of Plaintiff's receipt of that Notice. A copy of the Determination and Notice of Rights is attached hereto as **Exhibit A**.

## II.      PARTIES

5.      Plaintiff Hanora Zaahid ("Plaintiff" or "Ms. Zaahid") is an adult individual and resident of the State of New Jersey, residing at 1148 Mechanic Street, Camden, New Jersey 08104. At all relevant times, Ms. Zaahid was employed as a Licensed Social Worker in the Commonwealth of Pennsylvania and is a practicing Muslim woman who, as an expression of her sincerely held religious beliefs, wears a niqab—a face veil that covers the face except for the eyes—at all times in public.

6.      Defendant YesCare Corp. ("YesCare") is a private corporation that provides contract behavioral health and medical staffing services to correctional facilities. At all relevant times, YesCare operated as the employer of Ms. Zaahid, providing staffing services to the Philadelphia Department of Prisons under a contract. Upon information and belief, YesCare is incorporated and/or maintains its principal place of business outside of Pennsylvania but regularly conducts business within this district. YesCare employs more than fifteen (15) employees and is an "employer" as defined under Title VII, 42 U.S.C. § 2000e(b), and the PHRA.

7.      Defendant City of Philadelphia ("City") is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania. The City operates the Philadelphia

Department of Prisons, which manages and controls Curran-Fromhold Correctional Facility ("Curran" or the "Facility"), located at 7901 State Road, Philadelphia, Pennsylvania 19136. At all relevant times, the City, through the Philadelphia Department of Prisons and the staff of Curran, exercised supervisory authority and control over employees and contractors working within the Facility, including Ms. Zaahid, and constituted a joint employer of Ms. Zaahid within the meaning of Title VII and the PHRA.

### III.   FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Religious Practice

8. Ms. Zaahid is a Licensed Social Worker holding licensure in both New Jersey and Pennsylvania. In or around August 2024, she was offered and accepted a position as a Licensed Social Worker with YesCare, which provides contract behavioral health and medical staffing to Curran-Fromhold Correctional Facility.

9. Ms. Zaahid is a practicing Muslim whose sincerely held religious beliefs require her to wear a niqab—a garment covering the face except for the eyes—at all times in public, including in the workplace. This practice is a fundamental expression of her faith.

10. Ms. Zaahid disclosed her religious practice and wore her niqab throughout the hiring process. Specifically, she was interviewed for the YesCare position while wearing her niqab, conducted a tour of the Curran Facility while wearing her niqab, and completed onboarding wearing her niqab. At no point during the hiring process did any representative of YesCare or the City indicate that her niqab would be prohibited.

11. The hiring and onboarding process was extensive, requiring months of background checks, fees, and the activation of Ms. Zaahid's New Jersey social work license in

Page 3 of 11

the Commonwealth of Pennsylvania. She resigned from a prior position in reliance on the offer of employment.

12.    Upon commencing work at the Facility, Ms. Zaahid complied with the Facility's existing security protocols, including permitting a female officer to verify her identity by comparing her face to her identification document before each entry. She performed this verification without objection or incident, and it posed no operational issue for Facility security.

**B. The Onset of Discriminatory Treatment**

13.    After several weeks of working at the Facility without incident, in or around late October 2024, a co-worker who held the same title and no supervisory authority over Ms. Zaahid began making religiously hostile and derogatory comments. This co-worker stated, in sum and substance, that officers accompanying Ms. Zaahid to segregation rounds would have a lesser chance of being assaulted by inmates because they had "a Muslim with them"—a comment that stereotyped and demeaned Ms. Zaahid on the basis of her religion.

14.    The same co-worker began asserting to Ms. Zaahid that her niqab violated facility policy, claiming a policy existed on the co-worker's personal home computer. When Ms. Zaahid requested to see this policy, the co-worker could not produce it. YesCare's HR department confirmed to Ms. Zaahid that prohibiting religious garb was not any part of YesCare's policy.

15.    Notwithstanding this confirmation, Ms. Zaahid's supervisor initiated contact with the Warden of Curran to inquire whether a prohibition existed.

16.    On or about Tuesday, November 5, 2024, upon Ms. Zaahid's return to work, she was directed to leave her workstation and report to the HR department of the Philadelphia Department of Prisons—not YesCare HR—where she met with Brett Johnson Jr. of PDP HR. That same day, Lt. Reid appeared at the HR meeting, along with Ms. Zaahid's YesCare

supervisor and a YesCare HR representative, and communicated that Ms. Zaahid was required to remove her niqab and could substitute it with a COVID-19 surgical mask.

17.    Ms. Zaahid requested the opportunity to speak with the Warden directly to advocate for a proper religious accommodation. She was afforded a meeting with the Warden. During that meeting, the Warden himself acknowledged that requiring Ms. Zaahid to substitute her niqab with a surgical mask made no functional sense—both garments cover the face—and he undertook to consider the matter further. Despite this acknowledgment, the discriminatory prohibition was ultimately enforced.

18.    On or about November 7, 2024, YesCare HR informed Ms. Zaahid that it had been directed by Philadelphia Department of Prisons administration that Ms. Zaahid was "100% not allowed" to wear her niqab, but could substitute it with a COVID-19 mask. This directive was communicated and enforced notwithstanding that: (a) other non-Muslim employees at the Facility continued wearing COVID-19 or surgical masks covering their faces without restriction; (b) Ms. Zaahid had performed her duties while wearing her niqab for weeks without incident; (c) the purported safety rationale—face covering—applied equally to the offered substitute mask; and (d) Ms. Zaahid had already demonstrated compliance with face-verification security protocols.

19.    The demand that Ms. Zaahid remove her niqab or forfeit her employment constituted an ultimatum premised on her religion. A COVID-19 surgical mask does not constitute a reasonable accommodation because it does not satisfy the religious obligation fulfilled by Ms. Zaahid's niqab, which is worn as a matter of religious duty rather than mere personal preference.

Page 5 of 11

20. As a direct result of Defendants' refusal to accommodate her sincerely held religious practice, Ms. Zaahid was constructively discharged and/or effectively excluded from her place of employment and deprived of the benefits of her employment. She suffered loss of income, loss of professional opportunity, emotional distress, mental anguish, and damage to her professional standing.

IV. **CAUSES OF ACTION**

**COUNT I**
**Religious Discrimination – Failure to Accommodate**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.**
**(Against All Defendants)**

21. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

22. Ms. Zaahid holds a sincere religious belief that obligates her to wear a niqab at all times in public, including in the workplace. This belief is protected under Title VII of the Civil Rights Act of 1964.

23. Ms. Zaahid informed both YesCare and representatives of the City/PDP of her religious practice and her need to wear her niqab. Her practice was disclosed at the time of hiring and accommodation was implicitly acknowledged by permitting her to work in niqab for several weeks.

24. Defendants refused to accommodate Ms. Zaahid's sincerely held religious practice, instead conditioning her continued employment on the removal of her niqab and substitution of a secular surgical mask.

25. A COVID-19 or surgical mask does not constitute a reasonable accommodation. It does not fulfill the religious duty underlying Ms. Zaahid's niqab practice and cannot be a "reasonable" accommodation where it fails to address the religious nature of the practice. See

Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977); Groff v. DeJoy, 600 U.S. 447 (2023) (an accommodation is not reasonable unless it genuinely eliminates the conflict between the religious practice and the employment requirement).

26. Defendants' purported safety rationale—that Ms. Zaahid's face covering was a security concern—was pretextual, as demonstrated by the following: (a) the substitute mask offered would also cover Ms. Zaahid's face; (b) Ms. Zaahid had complied without incident for weeks with security ID-verification protocols; (c) non-Muslim employees continued to wear surgical and COVID-19 masks without restriction; and (d) Curran's own security officer (Lt. Reynolds) confirmed there was nothing in writing prohibiting religious garb.

27. Defendants failed to engage in any good-faith interactive process to identify a reasonable accommodation that would not impose an undue hardship.

28. As a result of Defendants' failure to accommodate, Ms. Zaahid suffered adverse employment action, including constructive discharge, loss of income, loss of professional opportunity, and substantial emotional distress.

## COUNT II
### Religious Discrimination – Disparate Treatment / Hostile Work Environment
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
### (Against All Defendants)

29. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

30. Ms. Zaahid was subjected to discriminatory treatment on the basis of her religion, including derogatory and stereotyping comments directed at her Islamic faith and religious practice, demands that she remove her religious garb, and an ultimatum to either abandon a central religious practice or forfeit her employment.

31.     Defendants treated Ms. Zaahid less favorably than non-Muslim employees: other employees wearing face coverings (surgical or COVID masks) were not required to remove them or face termination, while Ms. Zaahid was required to remove the functional equivalent because it was religious in character.

32.     The conduct described herein was sufficiently severe and pervasive as to alter the terms and conditions of Ms. Zaahid's employment and to create a hostile work environment based on religion. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015).

33.     The hostile conduct was carried out by and ratified by supervisory employees of YesCare and authorized personnel of the City/Philadelphia Department of Prisons, thereby imposing direct employer liability.

34.     As a proximate result of Defendants' discriminatory conduct, Ms. Zaahid suffered adverse employment action, emotional distress, mental anguish, loss of income, and loss of professional opportunity.

## COUNT III
### Race/National Origin Discrimination and Religious Discrimination
### 42 U.S.C. § 1981
### (Against Defendant YesCare)

35.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

36.     Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits discrimination in the making and enforcement of contracts on the basis of race and ethnicity. Courts have recognized that discrimination targeting persons on account of their perceived ethnicity, including discrimination based on stereotypes associated with national origin and race,

falls within the statute's prohibition. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987).

37.    The discriminatory comments and conduct directed at Ms. Zaahid, including the reference to having "a Muslim with them" in the context of deterring inmate violence, reflect stereotyping that conflates religious identity with national origin or racial characteristics associated with Muslim communities, implicating § 1981.

38.    Defendant YesCare intentionally interfered with Ms. Zaahid's contractual rights to employment and equal benefits of the employment relationship on account of her race and ethnicity.

39.    As a proximate result of Defendants' conduct, Ms. Zaahid sustained the damages described herein.

**COUNT IV**
**Religious Discrimination – Failure to Accommodate and Disparate Treatment**
**Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.**
**(Against All Defendants)**

40.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

41.    The PHRA prohibits discrimination in employment based on religion and expressly requires employers to provide reasonable accommodations for sincerely held religious beliefs and practices, including religious headwear. 43 P.S. §§ 955, 955.2.

42.    Defendants' conduct, as described herein, constitutes unlawful religious discrimination and failure to reasonably accommodate Ms. Zaahid's religious practices in violation of the PHRA.

43.    Ms. Zaahid timely cross-filed her charge with the Pennsylvania Human Relations Commission as reflected in the EEOC charge. The PHRA requires that a complainant either await

PHRC action or, after one year, proceed to court. Plaintiff filed her EEOC charge on March 14, 2025. This complaint is being filed more than one year after the initial filing of the charge with the PHRC, and Plaintiff therefore satisfies the exhaustion requirement for PHRA claims.

44.     As a result of Defendants' violations of the PHRA, Ms. Zaahid suffered the damages described herein.

## V.    DAMAGES

45.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Hanora Zaahid has suffered and continues to suffer:

(a)     Loss of wages, salary, and employment benefits, past and future;

(b)     Loss of professional opportunity and career advancement;

(c)     Emotional distress, mental anguish, humiliation, and loss of dignity;

(d)     Out-of-pocket costs and expenses incurred in connection with the onboarding and licensing process undertaken in reliance on continued employment;

(e)     Punitive damages for the intentional and malicious nature of Defendants' discriminatory conduct; and

(f)     Attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and the PHRA.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hanora Zaahid respectfully requests that this Court:

(a)     Enter judgment in favor of Plaintiff and against Defendants on all Counts;

(b)     Award Plaintiff compensatory damages for lost wages, benefits, and emotional distress in an amount to be determined at trial;

(c)     Award Plaintiff punitive damages against Defendant YesCare Corp. for its intentional, malicious, and reckless disregard of Plaintiff's federally protected rights;

(d)     Order Defendants to implement lawful, non-discriminatory religious accommodation policies and to provide training to all supervisory personnel;

(e)     Award Plaintiff reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k) and 43 P.S. § 962(c.2); and

(f)     Grant such other and further relief as the Court deems just and proper.

## VII.    <u>JURY DEMAND</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Hanora Zaahid hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**CAIR-PHILADELPHIA**

_____

Adam A. Attia, Esquire
Council on American-Islamic
Relations (Philadelphia)
1501 Cherry Street
Philadelphia, PA 19102
aattia@cair.com
PA Bar ID: 326378
*Counsel for Plaintiff Hanora Zaahid*

Dated: May 8, 2026